UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT ANTHONY EVANS,

        Plaintiff,

v.

SCOTT CLINE,

        Defendant.
_____/

Case No. 1:19-cv-921

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

    **I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Branch County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues LCF Classification Director Scott Cline.

Plaintiff alleges that during April of 2016, LCF Deputy Warden L. Beckwith issued a memorandum to the LCF staff and inmates giving notice that a prisoner who has been terminated from an assignment may not request reclassification to that assignment until 120 days after the date of termination. (Compl., ECF No. 1, PageID.6-7.) Additionally, the memorandum stated that "any prisoner found guilty of a misconduct for theft while on his Food Service Assignment will not be rehired in Food Service at LCF." (*Id.*, PageID.7.)

Plaintiff was working at LCF Food Service when, on June 7, 2016, a misconduct ticket for theft was written against him. Plaintiff pleaded guilty to the charge. On April 17, 2017, Plaintiff made a written request for reclassification to food service, specifically a food service position in A unit. The classification department informed Plaintiff that no positions were available in A unit.

Fifteen months later, Plaintiff spoke to his unit counselor about being reclassified to A unit food service. Counselor Stahly submitted the request for reclassification. On July 30, 2018, Defendant Cline denied the request based on Plaintiff's prior theft from the kitchen.

On October 30, 2018, Plaintiff sent another written request to Cline to be reclassified to food service, claiming that Cline was biased in that he had reclassified prisoner Stephen Floyd to a food service position 90 days after prisoner Floyd pleaded guilty to theft. Cline stated to Plaintiff that under LCF policy, he would not place Plaintiff back into the food service pool.

Plaintiff filed a grievance against Cline. The grievance was denied at all three steps of the administrative grievance process.

Plaintiff claims that Cline's refusal to reclassify Plaintiff to a food service position, considered with his willingness to reclassify prisoner Floyd, and another prisoner, Carl Thomas, is a violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's complaint indicates that there are other prisoners who were fired for theft and then reclassified to food service. (*Id.*, PageID.9.) Those prisoners, Plaintiff claims, are unwilling to step forward because they fear reprisals. Similarly, Plaintiff claims there are other prisoners in Plaintiff's position—prisoners who have been fired for theft and Defendant Cline refuses to reclassify them to food service. (*Id.*, PageID.10.) Plaintiff seeks a declaration that Defendant Cline violated his rights as well as compensatory and punitive damages.

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that Defendant Cline violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.

### III. Equal Protection-Class of One

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The amendment essentially directs that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Otherwise lawful actions of the state can be rendered unlawful if the actions improperly discriminate among persons similarly situated. For example, when a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Plaintiff does not allege that Defendant Cline's actions burden a suspect class. Plaintiff's allegations also do not implicate a fundamental right. The Sixth Circuit has consistently found that prisoners have no constitutionally protected interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same).

There is some protection against state discrimination even where neither a fundamental right nor a suspect class is at issue. The Supreme Court acknowledged the viability of "class of one" equal protection claims in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000), stating:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989). In so doing, we have explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co., supra*, at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).

*Village of Willowbrook*, 528 U.S. at 564.

Plaintiff expressly invokes the "class of one" doctrine in alleging his equal protection claim. To properly allege his "class of one" equal protection claim, Plaintiff must allege facts to demonstrate that other prisoners were similarly situated *See, e.g., Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("First, '[t]o satisfy [the Equal Protection Clause's]

5

threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.'") To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff alleges that prisoners Floyd and Thomas (and others who would not come forward) were fired for theft, but he does not allege that they were fired for theft *from the kitchen*. Being fired for theft from the kitchen is material. It is a differentiating circumstance on the face of the policies. Theft may get you fired under the policy, but it is theft from the kitchen while you are working that precludes reclassification to a food service position. (Compl., ECF No. 1, PageID.6-7.) Indeed, Cline, when explaining why Petitioner would not be reclassified, based his decision on Plaintiff's "guilty misconduct for theft *in the kitchen*." (*Id.*, PageID.7) (emphasis supplied).

Plaintiff's complaint fails to state a claim because he fails to allege that the comparators are similarly situated, but his allegations fall short in two other respects as well. First, the Supreme Court recently has concluded that rational basis scrutiny is not properly applied to class-of-one claims involving employment decisions:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

6

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008). Here, as in *Engquist*, Plaintiff challenges an employment decision, the decision to hire him to work in food service, on a "class of one" theory. *Engquist* bars such a claim. *Id.*

Second, Plaintiff's allegations indicate that Floyd, Thomas, and others have been rehired while Plaintiff and others have not. Plaintiff's allegations put him in a class of more than one. That alone is not fatal to his claim. In *Village of Willowbrook* the Supreme Court expressly stated that "[w]hether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis." *Village of Willowbrook*, 528 U.S. at 564 n.1. Yet, if an equal protection "class of one" claim targets arbitrary treatment that is divorced from membership in a distinct group, it certainly matters whether the number of persons rehired is 4, if the number of persons not rehired is multiples of 4. At that point, the seemingly arbitrary decision would be the decision to rehire. Indeed, even if the numbers are in balance, classifying one decision or the other as "arbitrary" would be sheer speculation. Perhaps that flaw is merely a reflection of the *Engquist* determination that there are some decisions, such as the decision to hire someone into public employment, where discretion is informed by so many factors that it is impossible to classify the decision as arbitrary. Nonetheless, if one were to ignore the bar of *Engquist*, as presently stated, Plaintiff's allegations present nothing more than the speculative possibility of that Cline's decision to not rehire Plaintiff was arbitrary. As noted above, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," under *Iqbal*, Plaintiff has failed to state a claim.

For all of these reasons, Plaintiff's complaint is properly dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   December 4, 2019                                /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge